1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 10 | J & J SPORTS PRODUCTIONS, INC., | ) 1:10-cv-2099 OWW GSA |
| 11 | Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS** |
| | | ) **ON PLAINTIFF'S MOTION FOR** |
| 12 | v. | ) **DEFAULT JUDGMENT** |
| 13 | | ) (Document 11) |
| 14 | LUCAS J. GARCIA BLAS, el al., | ) |
| 15 | | ) |
| 16 | Defendant. | ) |

17

On May 18, 2011, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the present Motion for Default Judgment against Defendant Lucas J. Gacia Blas a/k/a Lucas Blas Garcia individually and d/b/a/ Manila Grill a/k/a Manila Ranch & Asian Pro ("Defendant"). (Doc. 11). Defendant has not filed an opposition. A hearing the motion was held on June 24, 2011. Attorney Thomas Riley appeared via telephone on behalf of Plaintiff. Defendant did not appear.

## BACKGROUND

Plaintiff filed the instant action on November 10, 2010. (Doc. 1). Defendant was served with the summons and the complaint on March 10, 2011. (Docs. 8). The complaint alleges violations of Title 47 of the United States Code sections 605 and 553. Plaintiff also alleges a state law claim of conversion and a violation of California Business and Professions Code section 17200, *et seq*. (Doc. 1).

1    Defendant has not answered the complaint or otherwise appeared in this action.  (Doc.

2    11- 1 at pg. 2 lines 17-18 & Doc. 11-2 at ¶ 2).  On April 15, 2011, the Clerk of the Court entered

3    default against Defendant Lucas J. Garcia Blas. (Doc. 10).

4    Plaintiff filed the instant Motion for Default Judgment on May 18, 2011. (Doc. 11).

5    Plaintiff requests that the Court enter default judgment against Defendant in the amount of

6    $112,200.00.  (Doc. 11-2 at pg. 2).  Despite being served with the motion by United States Mail,

7    Defendant has not filed an opposition.

8                                    **Legal Standard**

9    Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

10           By the Court.  In all other cases, the party must apply to the court for a
     default judgment.  A default judgment may be entered against a minor or
11   competent person only if represented by a general guardian, conservator, or other
     like fiduciary who has appeared.  If the party against whom a default judgment is
12   sought has appeared personally or by a representative, that party or its
     representative must be served with written notice of the application at least 3 days
13   before the hearing.  The court may conduct hearings or make referrals--preserving
     any federal statutory right to a jury trial--when, to enter or effectuate judgment, it
14   needs to:
                      (A) conduct an accounting;
15                    (B) determine the amount of damages;
                      (C) establish the truth of any allegation by evidence; or
16                    (D) investigate any other matter.

17   "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as

18   true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th

19   Cir.  1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

20           Factors which may be considered by courts in exercising discretion as to the entry of a

21   default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of

22   plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

23   in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

24   was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

25   Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir.

26   1986).

27   ///

28   ///

2

**DISCUSSION**

Service of summons and complaint in this action was made on Defendant Lucas J. Garcia on March 10, 2011.  A true and correct copy of the Proof of Service was filed with this Court on March 29, 2011.  (Doc. 8).  Defendant failed to respond to the complaint or otherwise appear in this action.  The Clerk of the Court entered default against Defendant on April 15, 2011.  (Doc. 10).  Defendant is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  (Doc. 1-2 1 at ¶ 3).

Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605 against Defendant for unlawfully intercepting, receiving and exhibiting the *"Firepower": Manny Paquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program* on November 14, 2009, at the "Manila Grill" located at 7737 North First Street, in Fresno, California.  Plaintiff requests enhanced statutory damages in the amount of $110,000.00 and $2,200.00 for state law conversion.

The relevant provisions of Title 47 of the United States Code section 605, which address unauthorized publication or use of wire or radio communications, state:

> (a) . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney. . .. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than $1,000 or more than $10,000, as the court considers just" for each violation.  47 U.S.C. §

1 | 605(e)(3)(C)(i)(II).  The court may award enhanced damages up to $100,000 for each violation if

2 | it finds the violation was willfully committed for commercial advantage or private financial gain.

3 | 47 U.S.C. § 605 (e)(3)(C)(ii).

4 |     Plaintiff attests that it is a closed-circuit distributor of sports and entertainment

5 | programming that purchased and retained the commercial exhibition licensing rights to the

6 | program at issue.  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the

7 | program to its commercial customers.  (Doc. 11- 4 at ¶ 3).  Plaintiff contends that persistent

8 | signal piracy of its programming costs the company, its customers, and the community millions

9 | of dollars annually.  (Doc. 11-4 at ¶ 11).  Plaintiff believes this results in part from the perceived

10 | lack of significant consequences (including nominal or minimal damage awards by the Courts

11 | who hear its cases) for such unlawful interception and exhibition by the commercial signal

12 | pirates.  (Doc. 11-4 at ¶ 12).  As such, Plaintiff requests the maximum allowance for statutory

13 | violations, totaling $110,000.00.  (Doc. 11-4 at ¶ 13).

14 |     Here, the summons and complaint were properly served on Defendant**.**  (Doc. 8).  Thus,

15 | Defendant's default was properly entered, and the complaint is sufficiently well-pled.  By his

16 | default, Defendant has admitted to willfully violating the referenced statutes for purposes of

17 | commercial advantage.

18 |     Although deterrence of future violations is an important objective of the statutes, the facts

19 | before the Court indicate that the Manila Grill, is a family owned Filipino style restaurant with a

20 | maximum capacity of approximately twenty five patrons.  (Doc. 11-3).   Dominque Vargas, an

21 | investigator for Plaintiff, submitted a affidavit indicating that the restaurant contained one forty-

22 | two inch flat screen television set that was hanging above cabinets in the southwest corner of the

23 | restaurant. The condition of the restaurant was rated "poor."  (Doc. 11-3).  Vargas conducted two

24 | head counts while he was in the restaurant for a total of about seven minutes, between 7:20 and

25 | 7:27 p.m.,on November 14,  2009.  Each of the counts revealed that fifteen persons were present

26 | during the fight.  Photographs of the establishment depict that the restaurant is located in a strip

27 | mall with other businesses.  (Doc.11-3 at 4-6).

28 |     Plaintiff requests $110,000.00 in damages for the Title 47 violations.  However, given the

1   relatively humble nature of the business itself, and the number of patrons viewing the program,

2   the Court finds that the amount of requested damages should be reduced.  The Court will

3   recommend a statutory award of $4,000.00 for the violation pursuant to 47 U.S.C. §

4   605(e)(3)(C)(i)(II) and an additional $4,000.00 in enhanced damages pursuant to 47 U.S.C. § 605

5   (e)(3)(C)(ii).

6        Additionally, Plaintiff seeks $2,200.00 in conversion damages, the value of the property

7   at the time of the conversion.  (Doc. 11-4 at Exhibit 2.)  Under California law, "[c]onversion is

8   the wrongful exercise of dominion over the property of another.  The elements of a conversion

9   are (1) the plaintiff's ownership or right to possession of the property at the time of the

10  conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights;

11  and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35

12  Cal.Rptr.3d 684 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs.,*

13  *Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 906 (9th Cir.1992).  "Because conversion is a

14  strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent

15  are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009).

16  Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right

17  to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v.*

18  *Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405

19  F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via

20  satellite" constituted a "right to possession of personal property" for purposes of a conversion

21  claim under California law).

22       Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights

23  to the program at issue, and thus had the right to possession of the property at the time of the

24  conversion.  (Doc. 11-4, ¶ 3).  Because Defendant did not legally purchase the pay-per-view

25  programming, *"Firepower": Manny Paquiao v. Miguel Cotto, WBO Welterweight*

26  *Championship Fight Program,* the exhibition of the event in the Manila Grill on November,

27  2009, constituted Defendant's conversion by a wrongful act or disposition of property rights.

28  (Doc. 11-1 at pg. 22).  Finally, Plaintiff has indicated that the sub-license fee for an establishment

1  similar in size to Defendant's for the program would have been $2,200.00.  (Doc. 11- 4 at Ex. 2.)

2  Thus, Plaintiff is entitled to damages for conversion in the amount of $2,200.00.

3  **RECOMMENDATIONS**

4  Based on consideration of the declarations, pleadings and exhibits attached to Plaintiff's

5  motion, the Court RECOMMENDS as follows:

6  1.  Plaintiff's Motion for Default Judgment be GRANTED;

7  2.  Judgment be entered in this action against Defendant, Lucas J Garcia Blas a/k/a

8  Lucas Blas Garcia individually and d/b/a/ Manila Grill a/k/a Manila Ranch &

9  Asian Pro; and

10  3.  Damages in the total amount of $10,220.00 be awarded as follows:

11  a.  For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $4,000.00;

12  b.  For the violation of  47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $4,000.00;

13  and

14  c.  For the conversion of Plaintiff's property, the sum of $2,200.00.

15  These findings and recommendations are submitted to the district judge assigned to this

16  action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

17  Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written

18  objections to these findings and recommendations with the Court and serve a copy on all parties.

19  Such a document should be captioned "Objections to Magistrate Judge's Findings and

20  Recommendations."  The district judge will review the magistrate judge's findings and

21  recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The

22  parties are advised that failure to file objections within the specified time may waive the right to

23  appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24

25  IT IS SO ORDERED.

26  **Dated:   June 27, 2011**          **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE

27

28